19-2693-cv
*Onel v. Top Ships, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty.

Present:

> DENNY CHIN,
> RICHARD J. SULLIVAN,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

MOSHE ONEL, AMARDEEP SINDHU, JOEL SOFER,

> *Movants-Appellants*,

CHRISTOPHER BRADY, INDIVIDUALLY AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED, MICKEY NARDIELLO, ZHENZHE WANG,

> *Plaintiffs*,

TOMY LUCKOSE, ANTHONY NGUYEN, CARLA BYRD, TODD LOCCISANO, JOSEPH M. PETITE, MARTINE-VIVIANNE PETITE,

> *Movants*,

v.                                                          19-2693-cv

TOP SHIPS, INC., EVANGELOS J. PISTIOLIS, ALEXANDROS TSIRIKOS, KALANI INVESTMENTS LIMITED, MURCHINSON LTD., MARC BISTRICER, XANTHE HOLDINGS, LTD.,

> *Defendants-Appellees.*

---

1

| | |
|---|---|
| For Movants-Appellants: | LEIGH M. HANDELMAN SMOLLAR, Pomerantz LLP, Chicago, IL; Cara Joy David, Jeremy Alan Lieberman, Pomerantz LLP, New York, NY. |
| For Defendants-Appellees Top Ships, Inc., Evangelos J. Pistiolis, Alexandros Tsirikos: | MICHAEL G. BONGIORNO, Jeremy Adler, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY; Felicia H. Ellsworth, Peter J. Kolovos, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA. |
| For Defendants-Appellees Kalani Investments Ltd., Murchinson Ltd., Marc Bistricer, Xanthe Holdings, Ltd.: | NOAH GILLESPIE, Peter H. White, Schulte Roth & Zabel LLP, Washington, DC. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Cogan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Movants-appellants Moshe Onel, Amardeep Sindhu, and Joel Sofer (collectively "Plaintiffs"), appeal from the dismissal of their Consolidated Amended Class-Action Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs were appointed as lead plaintiffs on behalf of a putative class of shareholders of defendant-appellee Top Ships, Inc. ("Top Ships") who purchased or acquired the company's common stock between November 23, 2016, and April 3, 2018. Defendant-appellee Evangelos Pistiolis is the CEO and President of Top Ships, and defendant-appellee Alexandros Tsirikos is the company's CFO. (We refer to Top Ships, Pistiolis, and Tsirikos, collectively, as the "Top Ships defendants"). Plaintiffs' claims arise from a series of transactions undertaken by Top Ships during the class period: Top Ships entered into a number of share-purchase agreements with two affiliated hedge funds, defendants-appellees Kalani Investments Ltd. ("Kalani") and Xanthe Holdings Ltd. ("Xanthe"), which are alleged to be controlled by defendant-appellee Murchinson Ltd. ("Murchinson"), a Canadian hedge fund itself controlled by defendant-appellee Marc Bistricer. (We refer to Kalani, Xanthe, Murchinson, and Bistricer, collectively, as the "Kalani defendants"). In addition to the share purchase agreements with Kalani and Xanthe, Plaintiffs identify a number of "reverse stock splits," as well as certain other share issuances and purchase agreements with third parties, as collectively amounting to a "death spiral financing scheme" jointly undertaken by the Top Ships and Kalani defendants.

Based on this purported scheme, the Complaint alleges five causes of action sounding in securities fraud. The first three are alleged against all defendants: Count I alleges the making of material misrepresentations or omissions in violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b); Count II alleges market manipulation in violation of Section 10(b) and Rules 10b-5(a) and (c); and Count III alleges market manipulation in violation of Sections 9(a)(2) and (4) of the Exchange Act, 15 U.S.C. § 78i(a). Count IV alleges that Pistiolis, Tsirikos, Murchinson, and Bistricer were "control persons" of their respective entities and thus liable under Section 20(a) of the Exchange Act, *id.* § 78t(a). And finally, Count V alleges that,

based on the underlying violation of Section 10(b), the Kalani defendants were liable to the class members as contemporaneous traders under Exchange Act Section 20A, *id.* § 78t-1.

The two sets of defendants moved separately to dismiss the entire Complaint. By order dated August 5, 2019, the district court granted both motions, reasoning primarily that the Complaint failed to state a claim because the transactions comprising the allegedly fraudulent scheme were fully disclosed to the investing public and, further, that the Complaint failed to allege any actionable misrepresentation or omission. The district court also denied Plaintiffs leave to amend the Complaint, concluding that any amendment would be futile. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

We review the district court's grant of the motions to dismiss de novo, "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff[s'] favor." *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (internal quotation marks omitted). The court "may also 'consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.'" *Id.* (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

Our review of a denial of a leave to amend a complaint is typically for abuse of discretion; however, where, as here, the district court denies leave on the basis of futility, our review is de novo. *See Hutchison v. Deutsche Bank Sec., Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

## I. Market Manipulation Claims

To state a claim of market manipulation under Section 10(b) and Rule 10b-5, a plaintiff must allege: "(1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI*, 493 F.3d at 101. The district court dismissed Plaintiffs' market manipulation claims on the basis that the Complaint failed to allege a manipulative act because each of the complained-of transactions was fully disclosed to the market. We agree.[1]

A "manipulative act" is "virtually a term of art . . . refer[ring] generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity." *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 129–30 (2d Cir. 2011) (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976), and *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)). Manipulation "connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Id.* at 130 (internal quotation marks omitted). We have further said that "[t]he gravamen of manipulation is deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand." *Id.* (quoting *Gurary v. Whitehouse*, 190 F.3d 37, 45 (2d Cir. 1999)).

---

[1] Because allegations of a manipulative act are also needed to state a claim of market manipulation under § 9(a), *see* 18 U.S.C. § 78i(a)(2), we also agree with the district court's dismissal of Plaintiffs' claims under that statute on this basis.

To determine whether activity falls outside that "natural interplay," "'courts generally ask whether a transaction sends a false pricing signal to the market.'" *Id.* (quoting *ATSI*, 493 F.3d at 100). Lastly, to be manipulative, the market activity in question "must involve misrepresentation or nondisclosure." *Id.* "[T]he market is not misled when a transaction's terms are fully disclosed." *Id.* (internal quotation marks omitted); *see also Santa Fe Indus.*, 430 U.S. at 477 ("[N]ondisclosure is usually essential to the success of a manipulative scheme."). In sum, then, a claim of market manipulation requires a showing that the defendants took some action that was intended to mislead the investing public concerning the price of the relevant security, which in turn requires an allegation that the defendants' conduct included a misrepresentation or nondisclosure.

Here, Plaintiffs do not — and cannot — argue that any of the individual transactions comprising the alleged scheme were not fully disclosed. The full terms of each purchase agreement were disclosed via Top Ships' public registration statements. Similarly, each of the complained-of reverse stock splits was disclosed to the public and approved by shareholder vote.[2] A Top Ships investor would thus have been fully on notice that significant numbers of Top Ships shares would be issued to Kalani (and later Xanthe, as well as non-party Crede GC III, Ltd.), leading to dilution; indeed, Top Ships specifically disclosed the risk of dilution as one of the risks to investors associated with the purchase agreements.

Unable to point to any nondisclosure related to a specific transaction within the alleged scheme, Plaintiffs argue that the Complaint alleges manipulation via the failure of the defendants to disclose the full nature or extent of the alleged scheme to investors at its outset. As the district court correctly noted, however, such an allegation falls short of stating a claim for manipulation. The Complaint does not allege any specific fact that would give rise to a plausible inference that the defendants knew or intended either that the parties would undertake the number and scope of transactions they ultimately did, or that the transactions would have the cumulative effect on Top Ships' value that they ultimately did. Without more, Plaintiffs' claim is essentially that the defendants' failure to disclose at the outset that they were undertaking a manipulative scheme transformed their transactions into a manipulative scheme.[3] We agree with the district court that this version of

---

[2] Plaintiffs make much of the fact that Pistiolis held or controlled a sufficient portion of voting shares to approve each of the reverse stock splits on his own. However, Plaintiffs do not allege that this fact was not disclosed to the investing public, again undermining any claim that Pistiolis's control of the vote was itself manipulative or that the approved reverse stock splits were manipulative. Indeed, Top Ships, through its public filings, clearly and repeatedly disclosed Pistiolis's control of the firm and warned investors that Pistiolis and related entities "ha[ve] the power to exert considerable influence over our actions and to effectively control the outcome of matters on which our shareholders are entitled to vote" and that "[their interests] may be different from your interests." J.A. 1186 (Top Ships Form 20-F for fiscal year 2016, as filed with the SEC March 14, 2017); *see also, e.g.*, J.A. 1158 (Top Ships Form 20-F for fiscal year 2015, as filed with the SEC April 26, 2016).

[3] Plaintiffs' reliance on *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60 (S.D.N.Y. 2015), in which a complaint alleging similar claims of market manipulation survived a motion to dismiss, is misplaced. The complaint in *Sharette* importantly included specific allegations of nondisclosure that, as the district court here noted, are altogether lacking in this case. In *Sharette*, defendant Credit Suisse was alleged to have misrepresented not just its true motive in entering the transaction at issue, but the very nature of the transaction itself: While Credit Suisse stated that it was lending out the securities only to investors seeking to hedge an existing position, it did not disclose that it also intended to use its shares to offer its clients an opportunity to conduct short sales of the security. *See id.* at 84 (acknowledging that if "the strategies employed by [Credit Suisse] can appropriately be characterized as 'hedging,' then [Credit Suisse's] 'scheme' entailed little misrepresentation"). Here, though, the Plaintiffs make no similar allegation concerning the defendants' disclosure of the

4

Plaintiffs' claim amounts to circular reasoning, such that Plaintiffs' allegations of a manipulative act are fatally conclusory. For this reason, we affirm the district court's dismissal of Plaintiffs' market manipulation claims.[4]

## II.    Misrepresentation/Omission Claims

We likewise agree with the district court that the Complaint fails to state a claim for misrepresentation or omission in violation of § 10(b) and Rule 10b-5(b). As the district court's order thoroughly documents, none of the statements identified in the Complaint constitute a material misrepresentation or omission, and the statements are therefore not actionable. For example, many of these statements are merely vague — such as Top Ships' statement that the funds raised via the purchase agreements would be used "for general corporate purposes," J.A. 215 — or indefinite — such as the risk disclaimer that shareholders "*may* experience significant dilution" due to the purchase agreements, J.A. 226 (emphasis added). Alone, such disclosures are not actionable misrepresentations. *See, e.g.*, *Wilson*, 671 F.3d at 133. Plaintiffs also point again to the defendants' failure to disclose the full extent or scope of their "scheme," such as by not disclosing the fact that Top Ships and the Kalani defendants had agreed at the outset to the issuance of shares equal to the entire amount authorized, rather than only a portion. But this claim fails for the same reason as the market manipulation claim: Nowhere do Plaintiffs plead with the requisite particularity that there was any such agreement or that the defendants otherwise knew that their disclosures to the market were materially inaccurate or incomplete. Because each of the identified alleged misrepresentations or omissions is not actionable, we agree that dismissal of these claims was appropriate.

## III.    Secondary Claims

Because we agree with the district court that Plaintiffs fail to state a claim for either market manipulation or a material misrepresentation or omission, we further agree with the dismissal of the Plaintiffs' related secondary claims. Because Plaintiffs' allegations concerning the "scheme" cannot support a claim that the Kalani defendants possessed any material, nonpublic information, Plaintiffs fail to allege that the Kalani defendants engaged in insider trading — or any other violation of the securities laws — and thus do not state a claim under § 20A of the Exchange Act, 15 U.S.C. § 78t-1. Plaintiffs' claims against Murchinson and Bistricer were also rightly dismissed. The Complaint does not allege any specific conduct by either defendant sufficient to support a claim that they themselves violated the securities laws (as opposed to aiding and abetting violations by the entities they allegedly control). *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 158 (2008) (stating that in private actions for securities fraud, "[t]he conduct of a secondary actor must satisfy each of the elements or preconditions for liability"). And, lastly, the Complaint also does not state a claim that

---

transactions' terms, and thus they fail to state a claim of manipulation. And to the extent Plaintiffs contend that *Sharette* stands for a broader proposition concerning the viability of market manipulation claims against similar "schemes" without more specific allegations of nondisclosure, we cannot agree that such a reading withstands our precedents, including *ATSI* and *Wilson*.

[4] Because we agree with the district court that dismissal is warranted due to the Complaint's failure to allege a manipulative act, we do not reach the Top Ships defendants' alternative arguments in support of dismissal, including that the Complaint fails to adequately allege scienter or loss causation.

these defendants may be liable as "control persons" under Exchange Act § 20(a), 15 U.S.C §78t(a), because, as discussed above, Plaintiffs fail to allege a primary violation of the securities laws.

## IV.    Denial of Leave to Amend

Finally, we also affirm the district court's denial of leave to amend the Complaint. Though generally leave to amend should be given freely in the context of market manipulation claims, *see ATSI*, 493 F.3d at 108, we agree with the district court that in this case, the flaw in Plaintiffs' claim — that the defendants fully disclosed each of the complained-about transactions — could not be readily remedied via amendment. As a result, any amendment would be futile.

\*     \*     \*

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk